in her official capacity as secretary of the army. Mr. Hyde for the appellate and Ms. Agenda for the appellate. Good morning, your honors. May it please the court. Bradley Hyde from Latham & Watkins Law Firm. Here with me as co-counsel is Ms. Adriana Erciaga, Mr. Gabriel Bell, and Mr. Mike David. It is our great privilege to act as pro bono counsel for Appellant Jason Sissel, a veteran of both the U.S. Marine Corps and the United States Army, and who was injured in the service of our nation in support of Operation Iraqi Freedom. A veteran who struggled to regain his ability to walk through over 16 months of rehabilitation after being medically evacuated from country. Now, fortunately, I'm not alone in my support for Mr. Sissel. As an addition to other members of the Latham & Watkins team who have stepped in to help, Mr. Sissel was joined by the National Veterans Legal Services Program, as well as a host of amici who have filed briefings in support of this appeal, including two military law professors and five different veterans' non-profit organizations. Now, all of these people, your honor, have come together to help remedy an injustice which occurs when a soldier is wounded in service of our nation, but is denied adequate disability compensation that they are entitled to under the law. Now, the facts in this case are relatively simple, your honors. Mr. Sissel was diagnosed with degenerative disease of the lumbar spine for his lower back and dense hypothesia and weakness of the right leg for his right leg. Both Mr. Sissel's back and right leg conditions were separately found to fall below retention standards by the military evaluation board, which evaluates whether a soldier should be recommended for military separation. Similarly, both Mr. Sissel's back and right leg condition were listed as unfitting conditions by the physical evaluation board, which ultimately decides whether a soldier's condition renders them unfit to continue service. Now, there's no dispute here, your honors, that the law requires that any disabilities be rated utilizing the VA rating schedule. And here, under the VA rating schedule, Mr. Sissel's right leg and back conditions should have been rated separately for a combined rating of 30% qualifying him for medical retirement. However, in this case, the PEB, physical evaluation board, failed to separately rate Mr. Sissel's right leg conditioning, denying him medical retirement. Now, importantly here, your honors, the VA, who separately rates soldiers for a disability, did correctly separately rate Mr. Sissel's right leg condition, assigning him a total rating of 30%. Now, I wish, your honor, that this was an isolated incident, but Congress has already determined this was not an isolated incident. In fact, in 2008, Congress passed the Wounded Warrior Act in order to correct, and I quote here, unfair and unjustifiably low disability ratings granted by the military for medical discharges. Now, the Wounded Warrior Act did a couple things to try and fix these disparities. The first is, as I said before, they required the DOD to use the VA's rating schedule. The second is they set up the Physical Disability Board of Review to evaluate ratings from soldiers who were medically discharged between 2001 and 2008. And as part of the board's responsibility, they must correct any errors that the Physical Evaluation Board had in their disability rating. They cannot, however, lower a disability rating. Simply put, the board was put in a place only to help veterans and to fix the, again, quote, unfair and unjustifiably low disability ratings. Unfortunately, in this case, your honors, Mr. Sissel sought relief through the PDBR for his unjustifiably low rating, and the PDBR failed to correct that disability rating, and we have appealed up to this court today to remedy that. Now, in our briefings, we make four primary arguments as to why this court should grant relief. The first is answering a court's question as whether the PDBR is entitled to heightened deference. Your honor, as we said in our brief, PDBR is not entitled to heightened deference. The other three arguments is that it's contrary to law because they did not apply the appropriate governing regulations. It is not supported by substantial evidence because the record does not support the PDBR's decision and that the record is not properly explained. I'm happy to summarize those and answer any questions you may have. Can I ask your opinion about what the best reading of the board's decision is? And so when I say board, I'm thinking PED and then board and then, I guess, Dr. Kibble after that, so board. The leg did not contribute to unfitness. Did the board say that? No, your honors. What's the best argument for why they didn't say that? They didn't say that. What they said is they went into this additional analysis to determine whether the leg was separately unfitting or substantially unfitting. And as we argue in our briefs here, that's contrary to law. That's not what the Army Regulation requires. Army Regulation 635-40 states that unfitting conditions and those which contribute to unfitness shall be used in evaluating the standard here. The PDBR inexplicably went through this additional heightened standard here to determine whether it should be separately unfitting. Now, there's another section, another portion of Army Regulation 635-40, which I think is also important here. Before you get into what the regulations say, I'm focused on what the board said. And I think your reading of the board might be right. I suspect when the government's up here, they're going to say you're misreading the board and that, in fact, the board said the leg does not contribute to unfitness. What's your best sentence or paragraph or part of the board's decision that would prove them wrong? What's the best part in the board decision that you can point to and say, aha, the board said the leg contributes to unfitness? I think that there's no statement where the board says the leg contributes to unfitness. The board goes through and analyzes, Your Honor, what specific diagnoses in his record was related to the leg, what functional limitations may be related to the leg here. But their analysis was focused on evaluating whether the leg was separately unfitting here. That's where their analysis was focused. But the first thing you said, and I think it's good for you if this is the case, and I think you might be right, because this is not a hostile question, is that the board decision at least could be read to imply, let's say, that the leg contributed to unfitness. I believe it could. They do not explicitly say that we recognize. So what in it would you point to? Maybe this is what you were just saying in catch of it. What in the decision would you point to to say, aha, this shows that when we read the board's decision, we should think the board is recognizing that the leg contributes to unfitness. There's a few areas, Your Honor. Both board and Dr. Kibble recognized that the leg was included in the constellation of conditions here. So the board and Dr. Kibble recognized that the PEB determined that the right leg was something that contributed to his disability. That didn't seem to be in dispute, and I don't think that the government is going to come up here and say that that's disputed here. They just went through this separate analysis to determine whether it was separately. To add into the fact that they recognized that it was included in the constellation, the board walks through and notes that the PEB listed it as a separately fitting. The board notes that the PEB listed it as an unfitting condition. The board notes the functional limitations, that impact is right. In fact, the minority opinion in the PDBR in Mr. Sissel's first appeal explicitly came out and said, this is an unfitting condition. Look at all the functional limitations that are in each of these profile restrictions, each of these medical evaluations, that would absolutely affect the right leg condition. And so there's numerous places, both in Dr. Kibble's opinion and both PDBR decisions and the minority opinion, which recognize that the leg was an unfitting condition. That doesn't seem to be disputed. PEB listed it there. The only question and analysis that the PDBR went through, through its post-hoc deliberations, was whether it was separately unfitting, which we argue and believe, just based on the plain text of the Army regulation, is not what's required here. Is it at least conceivable? And maybe your answer could be, well, it's conceivable, but that's not what happened. But just at the level of whether it's conceivable, the PDBR recognized that the PEB framed the inquiry in terms of the constellation of conditions, including the leg condition. But that doesn't necessarily mean that the PDBR signed on to that description. That's a great question, Your Honor. I want to point you to Army regulation 635-40, the one that we've been looking for here. The PDBR is absolutely right that the PEB can list conditions that are non-ratable as part of a constellation. We don't dispute that. But Section D of that same regulation states, any non-ratable defects or conditions will be listed in Item 8 of DA Form 199. That's the PE decision. But importantly, but will be annotated as non-ratable. But will be annotated as non-ratable. And that didn't happen here. Didn't happen here. The PEB decision right here, they listed both the back and right leg. If they were intending the right leg to be an un-ratable condition, they were required under the governing regulation to note that. They didn't do that here. The PEB was required to do that. So then the PEB didn't do that. But then I guess it's still possible that the PDBR would have recognized that the PEB thought the leg condition was part of the constellation, but the PDBR could have disagreed with that and thought, well, that's what the PEB, and I'm going to say that's what the PEB said. But my analysis shows that I don't think the leg condition was contributing. So both Dr. Kibble's opinion and the PDBR goes through, and they both state that we presume that the PEB intended or jointly collected them as a constellation of conditions because it didn't think that they were independently ratable. They made that presumption. That was a wrong presumption in view of the governing regulation. So the PDBR wasn't going through and just saying, let me decide. They just improperly applied the governing regulation. They didn't see an annotation in there. They made a presumption that actually goes against the regulation, and then they engaged in some kind of post-hoc analysis. But to answer your direct question, the PDBR doesn't have the authority to lower ratings, to go through and take a rating or a disability rating that the PEB has already assessed as unfitting and then through post-hoc deliberations say, well, you know what, we actually think that it is fitting. That goes, in fact, against the very purpose of the PDBR. The Wounded Warrior Act established the PDBR to correct the unjustifiably low disability ratings. They didn't establish the PDBR to go through and second-guess the PEB and say, well, actually, we didn't think that's really unfitting. The whole purpose here of the PDBR is to help soldiers not go through and undermine these ratings and second-guess the PEB, which explicitly listed the right leg condition as an unfitting condition. Under the Wounded Warrior Act, 1216A-B, the secretary is supposed to consider all medical conditions, whether individually or collectively, that render the member unfit. What does collectively mean? Your Honor. What is the statutory? How should we interpret that word? It could be that I have three injuries, neither of which by itself would render me unfit, but putting them together, it makes me unfit, having that combination of three. Or it could mean I've got one injury that makes me unfit and I've got another injury that makes me even more unfit, which would affect disability ratings. How do we know that from the statute? I don't think the statute gives us clarification there specifically on which distinction is going to be here. I think that one of the questions that arises from your hypothetical here Excuse me. Can you repeat the question? Sorry, Your Honor. It seems to me that what's important here is, for purposes of what the PD, the board, is supposed to do. There's too many acronyms. What the Disability Board is supposed to do is rate all conditions, consider all conditions that individually or collectively render the member unfit. And the collectively there could have different meanings. It could mean I've got three injuries, neither of which by itself considered independently in an isolation would render me unfit, but that combination makes it impossible for me to continue in military service. That renders me unfit. An arm limitation by itself might not be, but the arm and the leg and an eye altogether make me unfit. Or it could mean that part of what they're supposed to look at is I've got an injury that renders me unfit, and I've got another injury that, whether it by itself would render me unfit is a close question, but, boy, it sure compounds my inabilities. If I was just over the edge, if injury one just put me just over the edge on unfitness, this one takes me to absolutely crystal clear unfit because it has such an impact on my life. But we don't have to know whether that one that exacerbates things renders me independent by itself would make me unfit. As long as it contributes to answer your question directly, Your Honor, I don't think the statute gives clarification to that specific question. We're not arguing, however, that you can't rate things together. For instance, if Mr. Sissel's right leg and back conditions were of the type that they could be rated together, as many conditions are, for instance, it's an injury of the spine, and then the spine radiates to the leg, that could have been under the same diagnostic code. What's improper is when you have two conditions or three conditions which are rendering a soldier unfit for duty, and then you rate those conditions, but the ratings you provide them are not in line with the VA schedule here. So in this case... Wait, so is it your position that there is a determination in this record, in the record that went to the disability board, that the leg all by itself rendered him unfit? Because we have the constellation, as you said, where they sort of wrapped them together that rendered him unfit from the... Is that the medical evaluation? I don't know which acronym to use at this point. But the initial examiners, at a couple of different levels, looked at it together. But there's not in this record, as I saw, a finding that the leg all by itself rendered him unfit. So that's why I think this definition collectively may make a difference. I think there's not really explicit record evidence saying that the back by itself rendered him unfit. In each of these evaluations, they listed both his back and his right leg as rendering him unfit for service. The MEB listed them separately as failing retention standards. And if one thing failed retention standards, you fail retention standards, and you're referred to the PEB boards here. So if either of those, if it was just his leg or just his back, he still would have been referred to the PEB. The PEB looked at both of those, looked at all the functional limitations that were provided from the MEB, the inability to run, the inability to walk more than two miles, to build fighting positions, to climb on vehicles. They assigned those same functional limitations, which were assigned to both his back and his leg, to that same final PEB diagnosis here, things that implicate both the back and legs. The PDBR minority opinion in the first appeal here recognized that those same functional limitations, which are in every one of his evaluations and profiles after that, very fairly and likely should be contributed to his legs. I was in the Army myself for 10 years. I served in Afghanistan. I can tell you, running, road marching, getting on vehicles affects your legs, probably more than your back in this. But I would say, Your Honor, that while the record, I think, pretty clearly shows that his right leg condition was, on its own, failing retention standards on its own, separately unfitting because they didn't annotate it as a non-rateable condition. Again, we don't need to go there, because the clear text of the 635-40 says, all you have to do is contribute to unfitness. Every court that's asked that question— I'd like to have the same question about what it means to contribute to unfitness. Same question with collectively. Does that mean that if you've got one thing that makes you unfit, we don't need to ask the question anymore. You're unfit. But if you've got two or three things, none of which by itself would put you over the unfitness line, but together they do, then they would contribute to unfitness. Or do we ask, well, we know one thing will get you over the unfitness line, and this other thing here pushes you way, way, way beyond the unfitness line. So even for contributor collectively, I'm just trying to understand how we're supposed to interpret these terms. I don't think there's really a distinction between those two interpretations. I think that the reason you continue to— What is the interpretation? Sorry. The interpretation of how you assume things collectively here, whether you're saying that you're just going to assume it all together or something's just going to push you over the line. The analysis here is really just determining what is your disability rating for your compensation here. So if you are assessed by the PEB to fail retention, to not be able to do your job, they're going to medically discharge you. And all these extra things that get added, whether they are listed as contributing or they're included in the constellation or they're even listed as non-ratable, are there specifically just to determine what is your total disability rating at the end, which if it's greater than 30% is going to give you military retirement. If it's less than that, they're going to give you a small check, and then they're going to say goodbye here. So any of that contributing stuff, as long as it's listed as a condition by the PEB, as an unfitting condition, it has been deemed a condition that is unfitting, that is either independently unfitting or contributing to unfitting. Now there's not an explanation in the PEB's decision of whether something is just independently on its own or contributing. Again, I don't think we need to make that distinction because the governing regulation says all you have to do is contribute. But if this court were to buy the government's argument here, contrary to the Army regulation, that it has to be substantially unfitting or separately contributing to unfitness here, I think we still meet that standard. Was this regulation adopted before or after the Wounded Warrior Act? Army regulation 635-40, I believe, was after the Wounded Warrior Act or as part of the Wounded Warrior Act, but we can verify that, Your Honor. Okay. That would be helpful to know. Thank you, counsel. Unless my colleagues have further questions at this point, we'll hear from the government and we'll give you a little time for rebuttal. Thank you. Mr. Janda. Thank you, Your Honor, and may it please the Court. Sean Janda for the Secretary of the Army. I'd like to start with where you started, Judge Walker, which is what the Board actually said. I think if you look at JA-79, the Board makes a very clear factual determination that the leg condition in the Board's judgment would have no impact on the unfitness of Mr. Sissel. I think that's the sort of factual determination that the Board eventually reached. And I would suggest, Your Honor, that the underlying P.E.B. decision is a little inscrutable about how much each of the two conditions in the P.E.B.'s view contributed or contributed at all to the unfitness. On JA-79, I see where it says, I guess we can... I think the relevant sentences are in the district court's opinion. Okay. So I don't think that these sentences are sealed because they're quoted in your brief. I believe they're in the public version of the brief. I'll be honest, I'm not 100% sure. Well, so I don't know whether that paragraph is... The paragraph begins with the word panel members. Is that talking about the VA panel? Who are the panel members? My understanding is the panel members are the members of the Board. The members of P.D.B.R.? Yes. Right. So they're referring to themselves in the third person. Correct. So I think that reflects the Board's judgment. And then just more generally, I've got that paragraph circled. That kind of helps you. You've got the paragraph earlier that kind of, I think, supports the different reading that Mr. Stischel's attorney endorsed. What do I do if the decision contradicts itself? So I don't think the decision contradicts itself, Your Honor. If there's specific language that you want me to address, I'd be happy to. I think what the Board says at the beginning is... It does refer to a constellation of conditions that was unfitting. That's in the first paragraph under the analysis summary. Right. So I think what it's saying, or what the Board is saying, is that they understand the P.E.B.'s underlying decision as just sort of saying this individual is unfit, without sort of separately thinking about the contribution of the back and the contribution of the leg. But in the P.D.B.R.'s judgment, the medical records do not support the finding that the leg itself had any impact on unfitness when disaggregated from the back. How could they? I'm sorry. Go ahead. So the sentence that you're focused on, on the no impact, it's followed by a sentence that speaks of the leg condition would not have on its own caused him to be found unfit. And the on its own, even under your understanding of it, isn't enough, right? Because even if it wasn't on its own enough, there's still the question of whether it contributed to. Right. So I think then when you go to the sentence after that, I think then the board makes clear that really it's finding that there's no impact. And I think the board was sort of separately thinking about the question whether the condition is unfitting on its own and then the separate question about whether it contributed to unfitness in some material way. And I read that paragraph as saying certainly not unfitting on its own, and we think no impact on unfitness at all. Well, so another way to read it is to say that when we're talking about no impact, what we mean is no impact of a kind that would on its own render somebody unfit. And that, by your own estimation, I know you're going to disagree with that and say that's not what they did. But if that is what they did, then that wouldn't have been enough because you still have to get to the contribute to part under the way you think about it, right? There still has to be an assessment of whether even if the leg condition on its own didn't render unfitness, didn't result in unfitness, it could have contributed to unfitness. Yes. But I think, and I mean I do think the board decision is clear that it didn't think there was any impact. I think Dr. Kibble's decision and then ultimately the final decision adopting. So here's my question about any impact and how that assimilates into contribute to. So the reg speaks in terms of in itself is unfitting or contributes to the unfitting condition. So it just says contributes to. Your brief speaks in terms of substantially contributes to. So what if somebody says, well, I think the leg condition might have contributed to it, but I don't know that it substantially contributed to it. Just as a matter of law, that seems like that doesn't work here because all that the regulation requires, even if we disregard what exactly contributes to mean, the regulation speaks in terms of contributes to, not substantially contributes to. So let me say a couple things, Your Honor. First is that I don't think the court needs to key in on that distinction because I think the board decision finds no impact at all. And so that would be enough to resolve the case. To the extent that the court is inclined to key in on that distinction, though, my understanding is that the board and the secretary do view the statute and the regulation as requiring a substantial or significant contribution, not just sort of any iota of contribution. And I think there's a couple of justifications to that. I mean, one is I think it's inherent to some degree in the language of 1216a says sort of render unfit. The regulation says contributes unfitness. And I think there's a sort of materiality or substantiality condition built in. And if there's any question about it, I think the VA rating scale and the way it operates further supports this substantiality contribution because the VA rating scale operates in 10% increments. So the minimum rating above 0% is 10%, which I think definitely connotes some degree of substantial contribution to unfitness. The board can't say, you know, we're going to rate the condition because it contributes one iota to unfitness. I keep saying iota, though, but imagine a spectrum. No impact, de minimis impact. Impact, substantial impact. I think there's a gap between de minimis impact and substantial impact. And if we are in that gap, doesn't that count? So let me say, I don't think we're in that gap,  and I think the board's factual determination on this is more than supported by the record. But as I say, I mean, I think even a 10% rating is a sort of substantial rating or reflects a substantial impact. And so the extent that that's the minimum rating that can be given above 0%, I think that just incorporates some notion that there really is, there really has to be. How do I know that 10% is, that the board and the secretary ultimately, which is what we're reviewing, would have thought that 10% is a substantial impact and not just an impact, but something that falls short of substantial? There's nothing, all I have is a regulation that says, it doesn't use the word substantial. It just says contributes to. And so, I mean, you could say, well, contributes to means substantial contribution, but it just doesn't say that. And then the brief says substantial, the decisional document says something like that. It has a modifier to contribute. So how do I know that somebody's not seeing a distinction there between contribution and what you're calling a substantial contribution that matters? So just to be clear about this, I think this is important. The board decision says no impact. I mean, that's sort of the paragraph we were discussing earlier. And so I don't think the court needs to get into this. That being said, I think just some notion of sort of significance or substantiality is, as I said, built into the idea in the statute of actually rendering the person unfit or of really meaningfully contributing to that unfitness. And to the extent that there's any doubt, and I think the other thing to keep in mind is that the regulation that's being quoted is a regulation that governs the physical evaluation board proceedings. And so the PDBR, as we explained in our brief, is itself exercising some degree of pretty substantial discretion that's not constrained by the statute to determine when there's a regulation that governs the PDBR and it says it reviews the accuracy and fairness of the underlying ratings. And so I think it would be perfectly fine for the PDBR to say, you know, the way that we understand the statute and this test and sort of supported by the VA ratings is that we think there needs to be a real substantial contribution for us to overturn. That might be perfectly fine, but I just don't see where anyone's done that. It just, the regulation says contribute. It doesn't say anything beyond contribute. And put aside the no impact point for a second. I've got that point, but just put that to one side for a second. The regulation just says contribute. And then the language in the brief and in the decisional document has something more than just contribute. It just says something more than that. And it might well be totally fine to say the way we read contribute is substantially contribute, and what we mean by substantially contribute is we're assimilating it to the 10 percent increments, and therefore that's the level of substantiality that we're talking about. But I just don't have anything like that to look to. So my understanding, Your Honor, is that that's how the Army and the Board understand the regulation. I mean, I don't read anything in the record from Mr. Sissel as keying in on that distinction, and so I don't think the Board felt the need to sort of justify from first principles the standard that it understands to apply in this context. I think if Mr. Sissel had in front of the Board said, you know, anything that contributes even a little bit or that sort of contributes more than a de minimis amount has to be rated, maybe the Board would have had the opportunity to explain exactly why it reads. Then how do you understand substantiality to work? What does more than de minimis mean? Because I think you don't understand substantiality to mean something more than de minimis. Is that right? Certainly I think substantial is more than de minimis. I mean, whether there's sort of some intervening space between de minimis and substantiality, I'm not sure. But I think the way the Board understands it is just that there really has to be some tangible material, substantial contribution, and again, maybe in a different case. Would that be enough? So if it takes it from 55 to 75, you're already there. The other condition already independently does it, and this takes it from 55 to 75, that you're even more unfit, and it adds on. Would you say that's substantial material? Would you say it's not because you're already there? No. So if you have one condition that independently renders you unfit and a different condition that really substantially contributes to that unfitness or sort of makes it substantially worse or more unfit, my understanding is that the Board would rate that condition separately and would sort of consider that to fall within the rateable conditions. You also have a circumstance where you have two conditions, neither of which independently would render you unfit, but both of which, sort of taken together, each substantially contribute to an overall finding of unfitness. Sorry. Go ahead. So are you saying that if you're there at 51 percent, one condition puts you at 51 percent, 51 percent makes you unfit, and another one so exacerbates everything that we are now ready to say that you are 75 or 80 percent unfit? Which is less than 50 percent, but it's a very material increase. The Disability Review Board had to factor that second exacerbating condition into its disability rating? Yes, that is our understanding. I mean, it's a little bit weird because the Board wouldn't review anything where there was a more than 20 percent rating originally, so you're not sort of talking about this space. But I think our understanding or the Board's understanding is that anything that substantially contributes, even if a different condition independently renders you unfit, if there's a substantial exacerbation or contribution to that unfitness, by a second condition. I mean, you're already unfit. It's not contributing to do you pass the definition of unfit, but it sure does make you more unfit. And so when we talk about unfitness, it's not just an on or off switch. It's a how unfit are you? It's are you unfit, and if so, how unfit are you? Right, so I think there's the threshold question of whether a particular condition either renders you unfit or substantially contributes to your unfitness. And that's the threshold binary question with respect to each condition. And then there's the rating question. But the only conditions that are rated are those that contribute in some meaningful, substantial, significant, whatever adjective you want to use, way to your unfitness. And so here, I mean, I read the Board's decision. It said to find no impact at all. But I think even if it were something more than no impact, the evidence in the record sort of amply supports the determination that there's not any meaningful or substantial contribution to the unfitness from the leg condition as divorced from the back condition. So if I could just stick on the example using the 0 to 100 scale that we've been talking about. So if we're over 50 with one condition, the back condition, let's just say gets you over 50 by itself. And then what the leg condition does is take you from 50 to 65. And let's just say that the 15 increment is something that the Board would consider to be substantial. What you're saying is, okay, 51 to 66, just to make sure we're over 50, 51 to 66 would mean that the leg condition has to be rated because the 15 increment is substantial. But 51 to 58 wouldn't. That does contribute to unfitness in the same way that the substantial contribution would in that it exacerbates the unfitness, but not enough that it has to be separately rated. Am I understanding the— I think not precisely, Your Honor, because I think that comes at it from the sort of wrong way, from the backwards way, which is that this unfitness determination is made outside the context of the VA rating determination. So the Board doesn't say, you know, we would rate this 6% or 7% or whatever, and that's not enough, so we just round to zero. What the Board says is, sort of as a qualitative measure, to what extent does this contribute to unfitness? And if it contributes in some significant or substantial way, then it gets rated. Okay, so I don't mean—I'm sorry. I didn't mean for the 15 to be the percentage rating at the end of the day. I think I see how that's confusing. What I'm saying is, just conceptually, there's a condition that by itself is enough to render you unfit. That is something that the Board determines, right? Correct. And then there's another condition that exacerbates the unfitness. It wouldn't by itself render you unfit, but it exacerbates the unfitness that's already caused by the first condition, by Condition A. And then with Condition B, there is a determination, I think there has to be, that Condition B exacerbates the first condition by enough to make it substantially, a substantial contribution such that it has to be severally rated, or it exacerbates it but not by enough to make it a substantial contribution such that it wouldn't have to be rated. Am I understanding that? I think that is correct, Ron. Yes. There's just a quality of determination about how much that second condition contributes to the overall sort of profile of unfitness. Okay. And so here, in this case, if we—your first submission is, don't even worry about any of that because the PDBR said no impact, and so we're not even talking about any contribution at all. Correct. Now, if I—by hypothesis, you're going to resist this, but just accept it for purposes of argument. If I don't find that completely dispositive and then I'm in the land of, okay, then I need to think about the contribution part of this, then am I right in thinking there's nothing that tells me whether the leg condition, that helps me understand why the leg condition might have contributed but not have contributed enough to get me to substantial contribution? And there's no explanation somewhere in any manual that elaborates on the regulation or anything that tells me how to understand substantiality. Right. I mean, I think it's certainly a qualitative standard. It's not a quantitative standard or anything like that. I think both the board decision and Dr. Kibble's analysis go through in pretty significant detail why, in both of their views, the leg condition would—I think it would be weird to say no impact, but would have a very minimal impact. And, I mean, I think there's sort of two separate things there. I mean, one is if you look at the medical records themselves, as Dr. Kibble says, they sort of generally show a sort of mild or intermittent weakness. Sometimes it doesn't show up at all. In the medical records, when it does show up, it tends to be rated relatively close to normal or on the verge of normal. Then the other thing is the sort of performance-based evidence that nothing in the commander's statement, I think, sort of explicitly links any of the limitations to the leg condition. And the profile, the restriction, which was issued two days after the commander's statement, only lists the back condition and sort of has similar restrictions as those in the commander's statement, which, I think,  And so I think taking those two things together, both the board and Dr. Kibble, evaluating this record, it determined that there really was not enough of an impact to warrant a rating, a separate rating. The PEB is quite short, and what is in there is back and leg. Do you think that the PDBR was disagreeing with the PEB? I don't think so, Your Honor. I mean, I think what the PDBR and what Dr. Kibble sort of say is that the fact that the PEB didn't separately list the conditions, I mean, if you look at the PEB rating, it sort of says back and leg and just lists them together as one condition. It reflects what was probably the PEB's judgment at the time, that the leg condition was not sufficiently unfitting to warrant a separate rating. And I think it's a very short narrative summary. I agree with that. But the sort of summary of the back and leg condition in the PEB finding sort of notes the 5 out of 5 strength in the leg, says there's some weakness. I mean, I think the best reading of that and the way that the board read that and the way that Dr. Kibble read that is sort of altogether evincing a judgment that the leg condition was not sort of sufficiently unfitting to warrant a rating. Did I hear Mr. Sissel's attorney to say that if that's what the PEB was doing, there's a reg that says they have to list the leg as specifically fitting, not unfitting? So I think you did hear that. I heard that. I'm not sure what the regulation is. That being said, I mean, I think the point is that they actually didn't list it as two separate conditions. It's the one that requires the annotation on DA199, isn't that? Yeah. I think they refer to 635. I don't know how they do these numbers. I have it as 3-5, where it says only unfitting condition will be considered in the rated capacity. Any non-ratable defects or conditions will be listed in Item 8 of DA Form 199 but will be annotated as non-ratable. Right. So I think if you look at the Form 199 here, which is JA173, that's where the PEB doesn't break them out and say we're rating both of these. It does not list the leg in Item 8 as non-ratable. In fact, it wraps the leg and the back together as the basis for its rating. But then you want to say that what the disability board here did was take it out and decide that the right leg was, in fact, non-ratable. So I think what the disability board understood this to be evincing was a judgment that the leg was not separately ratable because it's not rated separately. It's not broken out into its own condition. But then it didn't have to be listed? Right. The Army regulation is quite specific. You look at everything. And if you're looking at something, you come across something that's there. It's there, right? They've got TMJ or something, but that's not making them affecting their own fitness in any way. That's not ratable for them. You got it, but it doesn't make you ñ it doesn't bear on your ratability for unfitness. Then you have to list it as non-ratable. And they just definitely did not do that with the leg. So I think, again, had they thought it was warning its own separate rating, they would have listed it and rated it separately. I mean, the fact that they subsumed them together and didn't annotate the back and legs separately, maybe the answer is that they sort of failed to entirely properly follow the regulation in 2005. But I don't think there's anything ñ Or maybe they followed the regulation and considered unfitting conditions that contribute to unfitness. All conditions that contribute to unfitness. And they said, all right, these things ñ here's what contributes to unfitness here, back and leg. So I think, again, the board and Dr. Kibble said their understanding of the practice at the time. And I think you're reading, and I could be wrong, but I think you're reading from the 2017 635-40, which was not in effect at the time. There was a 1990 Army Reg 635-40. And just to be honest, I'm not sure what it says about this. I think the 1990 does have the same sentence that says, just to make sure I'm talking about the same thing, any non-ratable defects or conditions will be listed in Item 8 of DA Form 199 but will be annotated as non-ratable. That's the relevant sentence. I believe it's in the 1991 as well. So I think, and I think the answer there is just, if the board thought they were sort of both unfitting, they should have rated both of them. Maybe the board should have annotated the one that's not unfitting if that's the way it thought, and maybe the board didn't sort of precisely follow the regulations in 2005. I mean, Mr. Sissel sort of ultimately acquiesced in the board's judgment or in the board's decision. He could have requested a formal hearing if he thought that was a problem and he didn't. No, they listed, it wasn't that they left it out. They listed it over on the ratable side. I don't know why you keep saying the medical board did something wrong. The medical board looked at things that contribute to unfitting and listed these. I don't know how you can say that they made a mistake by not listing it as non-ratable when they specifically found it to be ratable and unfitting. I don't understand this argument that the PB is the one that made the mistake or the MAB is the one that made the mistake. What I'm asking is why the disability board didn't make a mistake by taking that thing that was determined to be ratable when considering at least factors that contribute to unfitting and putting it over in the no effect at all column. Right. So the MAB in 2005 listed them separately as two separate conditions. The PEB. I'm looking at the form, okay, the DA-199. That's what I'm talking about. That's what the regulation is talking about, JA-104. That's only the PEB, right? Correct, yeah. Right, right. And so rather than listing them separately in the way that the MAB did where the MAB said there are two conditions here. We have the back. We have the leg. We're listing them separately. The PEB smushed them together. I mean, I think as I read the board's decision and as I read Dr. Kibble's decision or analysis, their understanding is that the board would do this or what this reflects is that the board's judgment that the back condition and the leg condition should not be separately broken out and the leg should not be rated separately. I mean, again, it's one paragraph on the form. I agree with you or I would suggest it's insuitable in some ways. I think the PDBR now is trying to reconstruct what happened 18 years ago from these medical records and how they understand what the PEB did is that the PEB did not find the leg to be separately contributing in some substantial way to the unfitness.  So you might have a back condition and then it causes pain in your leg, so then the leg pain is a symptom of the back condition. Am I thinking about that correctly or would we just say no, like you have a back condition, you have a leg condition? So I think it is true that there could be a symptom and condition and those could be separate things and maybe the case from the medical records here that the leg pain is connected in some way to the back condition. I'm not a doctor. I'm not sure that that's what the records are saying, but I think that may be one reasonable interpretation of it. But I think what the VA rating schedule actually does make clear, what Mr. Sissel says it makes clear and we agree, is that these really do have to be considered separately. And so I think the leg condition for these purposes has to be disaggregated or the symptoms in the leg have to be disaggregated and there has to be that threshold ratability determination made. I think the board and Dr. Kibble make quite clear that when you look at the records as a whole, and I don't think the PEB made this determination, I don't think the PEB may not have been thinking about exactly this question, but I think the board and Dr. Kibble both reviewed the records in pretty substantial depth and came to the conclusion that those records did not support a finding that the leg condition when disaggregated from the back condition contributed in some substantial way that we think at all to the unfitness determination. That's the case that I think you are kind of hanging your hat on where the PEB just kind of made a clerical mistake. I mean, maybe it's a clerical mistake. I mean, maybe it's they saw the back of the leg as interrelated and so sort of put them together in that way. Again, it's 20 years ago and we have one paragraph on the form and it's a little bit hard to reconstruct, I think, exactly what the PEB was thinking. But it might be a reason, though, to read into the PDBR and Dr. Kibble's opinions and understanding that they thought of the leg as contributing to the condition. The unfitness. I mean, I think PDBR and Dr. Kibble did not think the leg contributed to the unfitness. I mean, I think they are quite clear about that. Well, I mean, you've got that no impact word. Right. I mean, no impact is no impact. I agree it's a relatively short decision and at times they talk about the substantial contribution standard, which is the standard that they use. But I think the ultimate finding there is very, very clear and is well supported by the record. And even if it were a little bit of an impact, again, we think the board's substantial contribution standard makes perfect sense. On your no impact, we have to have a sense of what they consider a relevant impact. And on JA 80, which is sealed, so I can't remember if this was in the district court opinion or not, but if you can turn to that, the last paragraph before the board finding section. Lines five to six say there was no documentation of and then use a two-word phrase, which would provide for a higher rating under the formula. Is that two-word phrase? I don't know if it's public, if I can say it, but if it's not, is that what they mean by no impact? I don't think so, Your Honor. I think this is their decision after remand, the final file. So I read the final paragraph. That's a pretty dramatic view of no impact. So I read the final paragraph that's talking about why they thought 20% for the back, but no higher than 20% when thinking about the back. What was the appropriate rating? Mm-hmm. Which the topic sentence of that paragraph, I think, turns away from thinking about the leg to thinking about the back. And so there obviously is a 20% impact from the back. But the sentence before that is talking about the individual may have suffered and then describes it. And that's the leg argument. So I read that as being about... So I had read that as because the leg thing did not meet this standard here. So I read that as being about the back condition, sort of narrowly focused on the back condition. Even though it's led into by the complaints about the leg condition. So I don't think it, I mean, Which is then subsumed under... So I think there's a separate question about pain in the area of the back, which is why I read this. You think this whole paragraph is about the back? This paragraph is about the back. And the leg, I think, is disposed of. He was complaining about leg pain. Yes. Do you complain about back pain? There is evidence in the record of pain tenderness. Before the board, did he complain about the rating being affected by back pain or leg pain? So I'm not sure, I mean, I think before the board, he was arguing both of the back ratings should be increased and that the legs should be separately rated. I'm not, to be honest, I haven't focused a ton of attention on exactly what he said in the back. And one of the reasons the legs should be separately rated is because of leg pain, which tied to back pain. I don't think leg pain necessarily, I mean, I think that's, it's up a little bit in the blue brief and the reply brief here. I think the leg condition, as presented to the board and as documented in the medical records, is more about sort of weakness, numbness. Weakness and numbness. Numbness is the antithesis of pain. Right, but I think... Weakness is not pain. Right, and... Nerve pain is pain. Right, and I think the medical records, and I think what the board was considering and what he asked the board to consider in the leg was focused on the weakness and the numbness. And there might be a separate question about leg pain. I think it comes up a little bit in the reply brief. I don't think it was really before the board, sort of pain as disaggregated from weakness or numbness in the area of the leg. Make sure my colleagues don't have additional questions for you. Thank you, counsel. Mr. Hyde, we'll give you 3 minutes for rebuttal. Thank you, Your Honor. Just 3 hopefully relatively quick points here. I want to address the primary argument that the government made here, which is the statement by the PDBR that there was no performance-based evidence that the right leg condition impaired his duty performance at a time of separation here. That seems to be what they're hanging their hat on to say that it didn't even contribute here. As we pointed out in our briefs here, that is just not supported by substantial evidence. The district court even recognized that the board's statement that Mr. Siso's leg injury did not impair his fitness to duty appeared to contradict the PEB's finding that his right leg condition rendered him unfit. It's also contradicted by the MEB's finding that his right leg condition was separately unfitting, was separately not meeting retention standards here. If you take a look at the actual record here, they just say nothing in the record supports that it contributes here. But every single evaluation in his record included either an explicit diagnosis of his right leg condition, the hypothesia and or pain, or functional limitations that both the MEB and the PEB associated with both the back and the leg, functional limitations against running, against stooping, against walking. Now, the government and the PDBR seizes on the fact that the last VA rating showed that he had normal right leg strength and gait. It's kind of what they hang their hat on to say no matter all this other evidence that we've seen, no matter the PEB's evaluation, the MEB's evaluation, no matter all the functional limitations, we're going to disavow all of that because normal right leg strength and gait. But normal right leg strength and gait is not the end-all, be-all on whether something's going to affect you. If it hurts your leg to walk more than two miles, it's still going to be there, even if you could raise your leg during a fitness test for a minute. If you can't do a repetitive exercise because you can't feel it and you can't do it, that's still going to impact your ability here. Every single portion of the evaluation, every evaluation, the commander's profile, everything they seize on as not evidencing that the right leg condition rendered him unfit actually evidences the opposite. It shows specific things that can absolutely and should be absolutely attributed to the right leg condition. So, I mean, I follow that. That seems like a much heavier lift for you to ask us to take a look at basically a doctor's report's conclusion and say, like, we, three non-doctors, think that that doctor's report's conclusion got it wrong, when especially it seems like an unnecessarily heavy lift when I think multiple times today a theory has been floated that maybe they actually were saying that the leg contributes to the unfitness, in which case the law kicks in, and then we're on a little more solid ground, at least relative to the doctor's expertise about law, and say, oh, the law says if it contributes to unfitness, the law says it has to be rated. So why wouldn't you hit that one? First, I would say I just wanted to directly address that one statement, the PDBR, that it just didn't impact. Your Honor, I think that that's just unsupported by the record evidence with all the plethora of evidence that has supported it. I do agree, however, that both Dr. Kibble and the PDBR spends a lot of time talking about all the limitations that the right leg has in the record here, and that that does support that it at least contributes here. And so when you correctly apply the Governing Army Regulation, either way, Mr. Sissle's right leg condition should have been rateable, as it was listed as an unfitting condition by the PEB. I will say, however, that we're not asking you to take the heavy lift of getting in here as non-doctors and overriding a doctor. It was actually Dr. Kibble that overrode six other doctors before her. The PEB doctors, the MEV doctors, the neurosurgeons went through, they're the ones that diagnosed Mr. Sissle's right leg. They're the ones that put forth their medical opinion that his right leg separately failed to meet retention standards. Military doctors came through and determined that his right leg was separately unfitting here. Can I ask one last question, I think, and it just follows up on Judge Walker's question and your answer to it? If there's a theory under which the Board operated on the premise that the leg condition did contribute, and I see that there's at least that possibility, how does that square with the statement in the PDBR's decision that the leg condition had no impact on duty performance? I don't think it squares. I found that statement to be incredible. I think that that statement is just completely contradicted by the record. It's contradicted by even their own analysis of his prior conditions. They go through repeatedly and they say it's vague. The commander's statement is vague about whether each of these functional limitations are assigned to the back of the leg. So the bottom line is then you think the decisional document is internally contradictory. I think it's internally contradictory. I think it applies the wrong legal standard, and I think that it doesn't really explain why it's deviating from the significant contradictory evidence, Your Honor. Okay. Do we know that when they say no impact, that's the label that they mean as a factual matter, factual medical matter? That there's zero impact or that it means no rateable impact, that is, no substantial contribution? I think it's the latter, Your Honor, and it's what the court seized on. So then the legal error would inform that statement? Yes, Your Honor. That you argue is a legal error. No impact that matters as a matter of law. Right, and I think that's where they're getting to. And the next sentence I think clarifies that, as I think Your Honor pointed out when the government was up here, that the next sentence is talking about the right leg condition would not have on its own caused the CI to be referred to as unfitting here. And that's the analysis they are going through. And, again, this is the last point I'll make here on this issue. My colleague at the government here keeps saying that his understanding is that the Army interprets their regulation as requiring a substantial unfitness or separately unfitness here. We have no Army regulation or memorandum saying that's how it should be interpreted. There's no case that the government cited today or in their briefings or anywhere at any time interpreting that regulation to require some heightened standard of separately unfitting or not. In fact, the only case that has answered that question, McCord, which is a federal claim, so the case of Narodan and Fax, explicitly rejected that interpretation and said that the plain language did not support that and it is irrelevant whether it's separately unfitting. Let me make sure my colleagues don't have additional questions for you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Millett, Walker